**In re LEROY M. HULL COMPANY, INC., Debtor.**

No. 7–01–03786–11.

United States Bankruptcy Court, W.D. Virginia, Roanoke Division.

Oct. 22, 2004.

---

John Edward Jessee, Bristol, VA, for Debtor.

## MEMORANDUM DECISION

WILLIAM F. STONE, JR., Bankruptcy Judge.

The matter before the Court is the Amended Motion filed by Claas of America, Inc. for the allowance of a Chapter 11 administrative expense in the amount of $17,173.47 in this case for certain equipment inventory which it provided pre-petition to the Debtor for the purpose of re-sale. Two items of this inventory were disposed of by the Debtor in post-petition transactions with customers for which it made no payment to Claas. One of these items was a mower sold to Ms. Willie Mae Nash during the time that the Debtor was operating as Debtor-in-possession. The parties are in agreement that Claas is entitled to an administrative expense claim in the amount of the $3,700 purchase price paid for this mower by Ms. Nash to the Debtor and not used by it to pay Claas. The other item of inventory provided by Claas was a baler which at some point after this case had been commenced was sold, traded or transferred by the Debtor to one William Daughtery. At least part of the consideration provided by Mr. Daughtery for this baler was a trade of a used baler. When Claas found out after this case had been converted to Chapter 7 that its baler was gone, it took possession of the used baler and sold it for $7,616.25. The amount owing by the Debtor to Claas for its baler was $21,089.72; the difference between this amount and the $7,616.25 proceeds for the used baler is the $13,473.47 balance of Claas's administrative expense claim. This portion of the claim is in dispute.

Although two evidentiary hearings have been set for the purpose of allowing Claas to prove the exact circumstances surrounding the disposal of its baler, it has elected

to submit the issue to the Court on stipulated facts. As pertinent to Claas's claim for its baler, Claas, the Chapter 7 Trustee, and counsel for the United States Trustee, the latter of which has objected to Claas's Amended Motion, have stipulated as follows:

1. On or about June 13, 2000, Claas sold the baler to the Debtor for resale by the Debtor. Class retained a first priority lien on the baler.

2. The amount owed to Claas on the baler was $21,089.72.

3. Sometime after the Chapter 11 case commenced, the Debtor sold the baler to William Daugherty. Mr. Daugherty paid for the baler by trading in a used baler and applying a prepetition credit that Mr. Daugherty alleged to have had with the Debtor. Claas had no knowledge of the sale of the baler by the Debtor to Mr. Daugherty.

4. The Debtor never paid Claas for the Baler. The Debtor had no credits with Claas.

5. Claas sold the baler for $7,616.25 leaving a balance of $13,473.47 due to Claas on the baler.

Equally or more important than the facts which have been stipulated are the following issues of fact which remain unresolved:

1. Whether the sale or other transfer of the baler occurred while the Debtor was operating as Debtor-in-possession during the Chapter 11 phase of this case or after the case had been converted to Chapter 7. The Court takes judicial notice of the fact that Claas has previously made assertions, since withdrawn without prejudice, that the Chapter 7 Trustee was personally responsible to it for the value of its lost baler.

2. What the actual value of the baler was at the time the Debtor transferred its possession to Mr. Daughtery, or what Claas could have expected to have obtained for the baler at the time it repossessed its remaining inventory.

3. Whether Mr. Daughtery in fact had a deposit or other pre-petition credit with the Debtor which purportedly served as partial consideration for Claas's baler and if so, the amount thereof.

4. Whether Mr. Daughtery furnished any additional post-petition consideration for the acquisition for Claas's baler beyond the used one which he traded in and if so, the amount of same.

The Court will take judicial notice of the fact that Claas did not seek to reclaim possession of its inventory during the Chapter 11 phase of this case or seek adequate protection of its secured rights at that time. To the contrary its representative appeared at a hearing upon a motion to convert the case to Chapter 7 and urged the Court not to grant such motion and represented that it was quite willing to continue to do business with the Debtor upon the existing arrangements.

## CONCLUSIONS OF LAW

This Court has jurisdiction of this proceeding by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984. The consideration of requests for allowance of administrative expense claims against a bankruptcy estate is a "core" bankruptcy matter pursuant to 28 U.S.C. § 157(b)(2)(A) and (B).

 Claims for allowance of administrative expenses against a bankruptcy estate pursuant to 11 U.S.C. § 503 are closely scrutinized and the claimant bears the burden of proving its entitlement thereto.

*In re Merry–Go–Round Enterprises, Inc.,* 180 F.3d 149, 157 (4th Cir.1999). Claas contends that it is entitled to an administrative claim for the unpaid portion of its invoice to the Debtor for the transferred baler on the authority of the Supreme Court decision in the case of *Reading Co. v. Brown,* 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968). That decision dealt with tort claims of adjoining owners of property against a bankruptcy receiver and his employee under the pre-Code Bankruptcy Act resulting from a negligently caused fire which destroyed the claimants' property. The Court held that it was more equitable and just for these fire losses to be borne by the creditors of the bankruptcy estate, for whose benefit the receivership was being conducted, than by the innocent property owners who had no business relationship with the Debtor. It further pointed out that liability insurance to protect the bankruptcy estate against claims for its negligence would clearly be an ordinary and necessary expense of the proceeding. Claas argues that it has been injured by the actions of the Debtor during the administration of the bankruptcy estate and therefore its loss should be considered an one of the expenses of the case which ought· to be paid before any distribution to unsecured pre-petition creditors. The following language, quoted by counsel for Claas in its brief, is particularly noteworthy:

> In considering whether those injured by the operation of the business during an arrangement should share equally with, or recover ahead of, those for whose benefit the business is carried on, the latter seems more natural and just. Existing creditors are, to be sure, in a dilemma [i.e., being the beneficiaries of a bankruptcy receivership which has caused fire losses to others as a result of the receiver's negligence] not of their own making, but there is no obvious reason why they should be allowed to attempt to escape that dilemma at the risk of imposing it on others equally innocent.

391 U.S. at 482–83, 88 S.Ct. 1759 (explanatory language in brackets added).

The Court concludes that the rationale of the *Reading Co.* decision is inapplicable to the claim advanced by Claas for the following reasons:

1. Claas is not an innocent third party whose property has been damaged by the reorganization proceeding, but rather a pre-petition creditor for whose benefit in part the attempted reorganization was being conducted.

2. Claas has never offered proof in an evidentiary hearing and has been unable to obtain a stipulation that the Debtor disposed of the Claas baler in its capacity as debtor-in-possession during its attempted reorganization.

3. The proper measure of Claas's loss from the transfer of the baler to Mr. Daughtery would seem to be not the amount owed to it by the Debtor for the baler, but rather the value of the baler, perhaps at the time it was delivered to Mr. Daughtery by the Debtor or perhaps what its value would have been at the time after conversion of the case that Claas took possession of its remaining inventory, not to exceed the amount then owing to Claas with respect to such baler. In any event there has been no stipulation made with regard to such value at either such time. To make the Court's point more plain, if the baler had remained in the Debtor's inventory and been repossessed by Claas after the case was converted to Chapter 7, there would appear to be virtually no basis to award Claas an administrative claim for any deficiency between the then value of the baler and the amount owing by the Debtor for it to Claas.

Finally, in addition to the Court's conclusions just noted that the rationale of the *Reading Co.* decision is not applicable to the loss suffered by Claas, there is another good reason why such claim ought to be denied. To accord Claas at this point an administrative claim for the value of the baler it lost, when there is no showing that there was any customer claim against the Debtor-in-possession to which it ought to be subrogated, would transgress the principle that a secured creditor must demand "adequate protection" of its secured rights in bankruptcy or waive any administrative claim for loss which occurs to the secured value of its claim occurring during the administration of the bankruptcy case. *Tidewater Finance Co. v. Henson (In re Henson)*, 272 B.R. 135, 140 (D.Md.2001), *aff'd*, 57 Fed.Appx. 136 (4th Cir.2003) (unpublished) ("Prepetition secured creditors, while not privy to administrative-expense priority, are protected under the Bankruptcy Code's provisions for adequate protection." 57 Fed Appx. at 138). *See also 3 Lawrence P. King, Collier on Bankruptcy* §§ 361.05, 363.05[1] (15th ed. rev.2004). In this case Claas did not take the proper steps to protect its own interest by seeking adequate protection from the Court for such interest. To the contrary, it was willing to rely upon the Debtor to protect its interest. That reliance having been misplaced, there is no reason now to give it that benefit which it might have obtained by demanding such protection and to shift its loss to the unsecured creditors who had no say in Claas's decision.

For the reasons stated the Court by separate order will grant the Amended Motion filed by Claas in the amount of $3700 only and otherwise denying the same without prejudice to Claas's right to file an unsecured claim for the amount of its remaining loss so that it might share pro rata with other creditors in the distribution of the bankruptcy estate.